317-0337, people of the state of Illinois, gathered by Justin Nicolosi, v. Amarat Patel, apparent by Brian Walker. Justice Holbreach, as you noticed, is in here. He was unable to be here this afternoon, but I can assure you he will review the arguments in this case as well as review the briefs. Counselor, you may proceed. Thank you. Good afternoon. We're here today because there was an interaction between Mr. Patel and a young woman whose name is Justice. After that interaction occurred, the police were called. After the police were called, many statements were made. Mr. Patel was charged with aggravated criminal sexual assault as a felony. The case proceeded as felony cases do, proceeded through discovery. Information was exchanged back and forth between counsel, and a decision was made to have a 402 conference with the presiding judge. We don't know what was said at that conference, but we do know that after that conference, Mr. Patel pled guilty. He was found guilty. He was provided 48 months of probation and lifetime registration as a sexual offender. After that occurred, Justice was in contact with people that Mr. Patel knew and wrote a letter where what she had said to the police was contradicted. When she wrote that letter, that was information that was not available at the time that Mr. Patel pled guilty. It was not available to the judge. It was not available to either of the two attorneys that participated in that 402 conference. It was not available to Mr. Patel. After the 402 conference, Mr. Patel did plead guilty. But before the 402 conference happened, a decision had to have been made. The question in front of the judge in a 402 conference, as we all know, is if the client, if the defendant pleads guilty, what will the recommendation be that this judge might make? So a decision had been made to plead guilty before the 402 conference, or at least to broach that concept that Mr. Patel would plead guilty. The judge then either made a recommendation or an agreement had come to play that an offer of a sentence would be given to Mr. Patel, and a decision was made for him to accept that offer. Those offers and acceptances and pleas of guilty have a lot of different characteristics and different considerations on all sides when that's done. Much has been made in the briefs and arguments in this case that a plea of guilty is tantamount to saying, I did everything that is presented in the claims. I respectfully disagree that that is a foregone conclusion. There's many times when people will plead guilty to avoid the potential of something that may happen in the future. It was discussed here earlier about defining the future. None of us can do that, but options and potentials are always placed on the table when people are considering what to do when faced with felony charges. Mr. Patel was asked very specifically by the presiding judge whether or not he did want to plead guilty. I think in all of the briefs and all the arguments, the statements and facts and potential evidence and what it would show has been repeated over and over. Justice would say that Mr. Patel touched her, attempted to force his penis in her mouth, and that that evidence would be shown. The question that was asked by the judge was, do you agree that that's what the evidence would be? And Mr. Patel's attorney very specifically stated, and I think it's important, that we will stipulate that that's what the evidence will be. Mr. Patel did not stipulate, did not agree, did not say, yeah, that's the facts. The consideration there is on the concept of newly discovered evidence. And can Mr. Patel say that this evidence is newly discovered when he knew it wasn't true to begin with? But I think Judge Vermillion really hit the nail on the head, and this is in the record of page 83. It hasn't been cited in any of the briefs, so I think it's important for us to look at this. And it comes right after Mr. Patel's attorney stated, Mr. Tonsack, we stipulate that that's what the evidence would be. Then the court addressed Mr. Patel and he said, even if you disagree with everything she said and you don't agree with her, do you believe that that's what the witness would say if she were here? And the defendant said yes. And even Judge Vermillion understood, I think, that Mr. Patel didn't necessarily agree with what justice, with what everybody said justice would say. He didn't agree that that was the facts, that that was the truth. But he didn't have any evidence at his disposal to demonstrate in a trial court that that wasn't what happened. All we had was what justice said to the police and what the police said justice said to them. And we didn't have, we don't have statements, we don't have testimony, we don't have depositions, we don't have any trial testimony. We don't have any evidence presented in a forum where the truth of the matter is tested as to what actually happened. All we have, we have third-hand information as to what everybody thinks justice would say. So you're saying that Mr. Patel didn't actually plead guilty, he just pled that there would be enough evidence for a jury or a fact finder to find that he had committed the crime. Yes. And he pled to lessen the potential damage that could happen to him and his family. He's looking at years and years in jail. That's a possibility on his felony charge and presented with a potential probation. That's a decision that was made. And then justice comes and says, well, no, what I said back then in June of 2013, I think the year was, wasn't true. It was something that my mother, not my mother, my aunt, after a three-hour conversation, came up with and said, you've got to say this because then we can get a bunch of money and get a new apartment. Wouldn't that be good? And justice said very specifically, very clearly that she wanted to help her in. And that's why she came up with the statements that were made that created the charges against Mr. Patel. Fraud on the court. I'm sorry. Fraud on the court. Yes. And extortion against Mr. Patel's employer. And he did file a lawsuit on behalf of the minor. And that was presented in the law division in Cook County. It was above the jurisdictional limit of the law division in Cook County. And that went forward as well. We don't know what the actual result of that. We know it was dismissed. It's assumed that it was settled for some amount of money. We don't know. But we do know that it was dismissed. Who sued whom? The minor's representative sued Mr. Patel and Mr. Patel's employer, the Star Inn. Or actually the company that owns the Star Inn. And that lawsuit was presented in the Cook County Law Division. And Justice also said in her deposition that she spoke to the attorney that represented her, the representative of her, in that lawsuit and told him the same things that she had told the police. A 214-01 motion was filed asking that the order entered finding Mr. Patel guilty be vacated in order for a trial to be presented with the evidence that justice provided us that what she said earlier was not the truth. I read a note to myself when I was preparing this is. There's an argument that new evidence shouldn't be recantations, shouldn't be believed because it's something that can't be used because it wasn't available at trial. But the new evidence really in this case is for her to say, yes, I said that he did this. I said he did that. And I said he did this. But then I lied when I said that. That's the new evidence that wasn't available to Mr. Patel at the time that he made the decision to plead guilty and to say, yes, I believe that she would say that on the stand because that's what everything was pointing to. And after she wrote the letter that she wrote and gave the deposition that she gave, we have a new piece that one small piece saying I lied. And that's what the 214-01 petition was asking. And in a 214-01 position, sorry, motion was looking at due diligence. That's the biggest thing. Is there an adequate defense? There is. After it was determined that we have the recantation, there is a reasonable defense. And was Mr. Patel diligent in presenting that in the original case? Well, he didn't have the information, so he couldn't present that in the original case. He pled not guilty and they went through the process and we're here because of that process. But was he diligent then in bringing the 214-01 petition? Yes, he was. It came to light that she had changed her mind and that she wanted to let the world know that she had changed her mind and that she had not told the truth. And that was the 214-01 petition was brought. And then a 2615 motion was argued that there's no law supporting your position. Well, there is a 214-01 is the law. I mean, it gives us the right. It gives Mr. Patel the right to ask for the order to be vacated because there is a piece of evidence that wasn't used that is available now to the trial court. And it wasn't used in that trial court when decisions were made to accept his plea of guilty. If the judge had said, OK, here's the evidence. Do you agree that Ms. Bales is going to say you did A, you did B, you did C? And then she lied about that. Do you agree with that? You still want to plead guilty? I don't think the same conclusion would be here today. Then the 2615 motion was filed. The only thing that really comes down on the judge's ruling on that is that the state says the 214-01 motion is insufficient at law. That's all they said. They didn't give us any reasons for it. The biggest reason they're saying is because once you plead guilty, you can't say you get newly discovered evidence as to use in the future. They're attempting to have people versus Barnsleyer drive this court. And I would suggest to you that the factual basis of people versus Barnsleyer is so far removed from the factual basis of this. This case that to apply Barnsleyer's dicta opinion to this case is a very, very difficult thing to do. Just to review quickly, Barnsleyer also was aggravated. Criminal sexual assault was a charge. However, it included kidnapping. It included alcohol to the point where the victim was inevitable to the point where she had no capability of consent for for any kind of sex. This Barnsleyer also was a post-conviction hearing asking for a finding of actual innocence. That is not what we have here. We have a 214-01 motion asking for a one specific ruling to be vacated. We're only asking for the judge to say, no, I don't find a factual basis. Thank you. Good afternoon, your honors. May it please the court and counsel. Your honors, the state would submit that the trial judge properly dismissed the defendant's 214-01 petition in this case because the defendant did not properly present a 214-01 claim. Quite simply, the recantation in this case is not newly discovered evidence. I think the law is clear. How is it not newly discovered? Because the Barnsleyer court establishes pretty succinctly and clearly that it's the substance of this evidence that must be analyzed to determine whether it's newly discovered. Quite obviously, as the people conceded in the brief, that the physical letter and the evidence deposition, of course, that is new in that anything that didn't exist before is new. But we're talking about a specific term of art. We're talking about newly discovered evidence. And for that, the Barnsleyer court says that it has to be that we have to analyze the substance of that evidence, of those physical documents. In this case, I would condense, boil down the substance of the letter and the deposition as Justice Bales saying that the defendant did not sexually assault me. That's the substance of this evidence, of these new documents. Quite obviously, the defendant, assuming Justice Bales' documents are true, her statements are true, the defendant knew that he didn't sexually assault her, of course. If it didn't happen, he knows it didn't happen. So how is it newly discovered? The Barnsleyer court goes into the analysis of this. Evidence isn't newly discovered if the defendant already knows that it exists, that it's true. The Barnsleyer court talked about how recantation is an exception to that general rule, but not when the defendant pleads guilty. That a guilty plea severs what happened before. And basically, by pleading guilty, you say that there couldn't possibly be any evidence that can produce different results than what is going to be answered in this court when they plead guilty. So, Mr. Michaloski, if we assume that this is true, that she lied, and that he pled guilty not because he was guilty, but because he said the evidence that would come out would show that he was, if he's not guilty, you're saying that this technicality of the law should require him to serve out the whole sentence? He's going to be on the sex registration list for the rest of his life. I understand the facts and that they're harsh, Your Honor, but we're talking about procedural law here. You said the technicality of the law. We're talking about the law in its entirety. I mean, this is a question of law. How can we throw out the law? I'm not saying whether I agree with this or not. That is not my position whatsoever. But your position is that even if she lied and he wrongly pled guilty, that that has to last for the rest of his life? I'm saying the law says that it has to last, yes. And the law is pretty clear that representations are unreliable and are not to be, as counsel mentioned. And the law, as I discussed in my brief, that it is pretty clear that the procedures that have occurred in this case got us to where we are today. And courts like Barnes-Slater and other courts have stated that when you present a 214-01 claim on newly discovered evidence, you have to accomplish certain things and certain prerequisites have to be met and that they just were not met in this case. So is the decision in Barnes-Slater controlling even if the facts are totally different? Well, Your Honor, I think procedurally I don't believe the facts are different. Just because that was a post-conviction petition and this was a 214-01 petition, as I argued in my brief, the procedure of that case is the same. It started with a guilty plea. And just because it was the defendant in that case used a post-conviction petition to allege newly discovered evidence and the defendant in this case used a 214-01 petition, as I said in my brief, that's a distinction without a difference. The fact remains that the defendant pled guilty and that when you plead guilty, you're basically asserting that there is no newly discovered evidence that's going to come along down the road. And again, the Court's pretty clear on that. There is no law supporting the defendant's position on this when we're talking about the law. And for that reason, the people who submit that, again, I'll say it again, I feel like a broken record, but the law supports the trial judge's decision in this case. And for that reason, the dismissal of the 214-01 petition should be affirmed. Are there any other questions that you have to answer? So when was the alleged victim lying? Before, now, or later? We have no idea. Yeah, we have no idea. And that's, again, I think I don't recall the cases that talk about recantations and their unreliability specifically, but I think that's probably a reason why courts in general consider recantations to be unreliable, because we don't know. There are obviously two diametrically opposed statements by the same person, and how do we know what to believe? Of course, the fact remains we have a defendant here who pled guilty. He said he wasn't lied to or tricked. He chose to plead guilty, and that's what we have to go with. It's in the record, and we kind of have to stick with that. I mean, are they held to be suspect because prosecutors are embarrassed by conviction? I wouldn't think so. Again, I don't know those cases specifically. I don't think even get into that too much in my brief, because I focused more on the procedure of a 214-01 petition and newly discovered evidence. I think that's what we need to focus on. I don't know specifically why courts don't favor recantations, honestly. But again, kind of— And you see cases where prosecutors fill in high water. No matter how many times people say, well, this wasn't the guy, and stuff like that, they still persist and say, oh, no, these people are still guilty, right? Sure, sure. If there are any other questions, I'd be happy to answer them. The substance is what counsel started with. The substance of what the defendant knew that he did not sexually assault Justice Bales, that would have put us and him into a he said, she said trial situation. She would have gone on to stand if they had actually gone to trial, and the only evidence, the only thing that he had is his testimony. And that, in my mind, is a very dangerous thing to put in front of a jury. He opted to plead guilty. Counsel said that we have to deal with the law and deal with the guilty plea. And counsel said, and he argued in his brief, that a plea of guilty means that there couldn't possibly be any other evidence in existence any time that could make me not guilty. I don't think that that's the law. I think that's an argument about what cases like Barnsley have said about newly discovered evidence. Well, I don't think it's very good. Oh, no. It's good up to a point. And then they turn and they kind of go off. In my mind, I kind of go off the rails, especially when they come up to say that. But when they when they say that nobody could ever recant and nobody could ever find new evidence and be able to present. That's difficult for me to accept. Challenge. Yes, it is a challenge. And it's a challenge because the law is fluid and a lot of changes. And you're asking us to challenge changing. I'm asking you to challenge Barnsley. This is first district. So it's not presidential for us. But I know that the state's attorneys have been using this case because it's very good for them. And it takes away the whole concept of having to be able to find more evidence after a plea of guilty has been made. But it's presupposing that that plea of guilty is knowingly involuntarily made knowingly. I think it's a telling word here is what did Mr. Patel know when he decided to plead guilty? He knew that her testimony was going to be very damning to him in a trial court. He knew that the only thing that he had to counter that evidence is his own statements. He knew that he has a very thick accent. He knew that he is not a white American. He knew that he would be sitting in front of a jury of 12 people picked at Will County. He knew all of that. He didn't know that Justice Bales would say that this is not what these people are saying. I'm going to say is not true. He didn't know that. That's the part of the knowing involuntary that I think we all have to. We have in front of us here whether or not what Justice Bales gave us was offering legal conclusions. She didn't do that. That is what the affidavits in Barnsleder. That was the problem that the court came to in Barnsleder is that the affidavits presented by the victim and by the other witnesses were replete with legal conclusions. He did not sexually assault me was written down. That was part of the affidavit. That's not what Justice Bales letter says. It's not what her deposition says. She says he didn't do this. My mom told me to do this. She gave me 50 bucks for my phone. Thank you. And she is not offering legal conclusions. Nowhere in her testimonies did I see any legal conclusions. And we sure didn't put them in there. So that's the biggest thing I've got. What Mr. Patel knew when he decided to accept that guilty plea or presented to Ashley Preece say yes I will plead guilty is different today than it was then. And that precludes that knowing involuntary guilty plea that counsel says it has is so damning and so controlling over all of the rest of the case. So that's what I've got. Thank you.